UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

Dennis Byars,
    Plaintiff,

v.

Dannel Malloy, et al.,
    Defendants.

No. 3:11cv17 (SRU)

MEMORANDUM OF DECISION

    Plaintiff Dennis Byars filed this action *pro se* alleging violations of his constitutional rights by Governor Dannel Malloy and President Barack Obama.  Byars claims that the Connecticut Superior Court, Appellate Court, Claims Commissioner, and General Assembly misinterpreted court rules and unlawfully allowed his former employer to reopen a default judgment.  Byars argues that the state's mistake favored his former employer's interests over his in violation of the Fourteenth Amendment.  He also alleges that the Department of Justice and the White House violated his right to equal protection when they ignored his complaints about the Connecticut courts' decisions.  Both defendants have moved to dismiss this action.  The state argues that a previous federal lawsuit precludes Byars from relitigating his case in this court. The United States contends that the sovereign immunity bars the court from adjudicating Byars' claim.

    For the reasons explained below, I conclude that this court must dismiss this action.  I therefore dismiss the action against Governor Malloy pursuant to Rule 12(b)(6), and the action against Barack Obama pursuant to Rule 12(b)(1) and Rule 12(b)(6).  The government's motion to substitute a party is denied as moot.

1

I.   Standard of Review

When considering a motion to dismiss, the court accepts as true all factual allegations in the complaint and draws inferences from these allegations in the light most favorable to the plaintiff. *See Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *Flores v. Southern Peru Copper Corp.*, 343 F.3d 140, 143 (2d Cir. 2003). The court considers not whether the plaintiff ultimately will prevail, but whether he has stated a claim upon which relief may be granted so that he should be entitled to offer evidence to support his claim. *See York v. Association of Bar of City of New York*, 286 F.3d 122, 125 (2d Cir.), *cert. denied*, 537 U.S. 1089 (2002).

In reviewing the complaint in response to a motion to dismiss, the court applies "a 'plausibility standard,' which is guided by two working principles." *Ashcroft v. Iqbal*, ___ U.S. ___, 129 S. Ct. 1937, 1949 (2009). First, the requirement that the court accept as true the allegations in the complaint "'is inapplicable to legal conclusions,' and '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (quoting *Iqbal*, 129 S. Ct. at 1949). Second, to survive a motion to dismiss, the complaint must state a plausible claim for relief. Determining whether the complaint states a plausible claim for relief is "'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Id.* (quoting *Iqbal*, 129 S. Ct. at 1950). Even under this standard, however, the court liberally construes a *pro se* complaint. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam); *Boykin v. KeyCorp*, 521 F.3d 202, 213-14, 216 (2d Cir. 2008).

II.   Facts

The following facts are drawn from Byar's complaint [# 1] and from previous decisions in related litigation. *See Byars v. Rell*, No. 10cv589, slip. op. (D. Conn. Aug. 23, 2010); *Byars v. FedEx Ground Package Sys., Inc.*, 101 Conn. App. 44 (2007). In 2004, Byars filed an employment discrimination claim against FedEx Ground Package Systems, Inc. ("FedEx") with the Connecticut Commission on Human Rights and Opportunities. After the Commission dismissed his claim, Byars sued the company under the same theory in the Connecticut Superior Court. Byars hired a marshal to serve a copy of the complaint on FedEx. The marshal gave the complaint to a FedEx store employee in North Haven, but did not deliver a copy of the pleadings to FedEx's registered agent. FedEx never responded to the suit and the court entered a default judgment awarding Byars $60,000.

One month later, FedEx filed a motion to reopen the judgment on the grounds that it never received Byars' complaint. The company also moved to dismiss the suit. The Superior Court granted both motions. Byars filed a series of appeals: He first went to the Connecticut Appellate Court, which affirmed the Superior Court's decision. He then filed a claim with the Connecticut Claims Commissioner arguing that the Superior Court and the Appellate Court had violated his right to equal protection by misreading Connecticut court rules in a manner that favored FedEx's interest over his own. The Commissioner reasoned that he had no power to act as "a super Appellate Court where unsuccessful litigants can obtain a second 'bite of the apple'" and dismissed the case. Byars next petitioned the Connecticut General Assembly for relief from the decisions of the courts and the commissioner. The General Assembly declined to address Byars' claims.

Byars next turned to the federal system. He filed a lawsuit in federal court against then-Governor Jodi Rell. He again alleged that the Connecticut courts had denied him equal

protection.  On August 23, 2010, U.S. District Judge Mark R. Kravitz concluded that the court lacked subject matter jurisdiction over Byars' suit. *Rell*, slip op. at 4.  Under the *Rooker-Feldman* doctrine, a federal district court cannot hear an appeal of a state court's decision. *Exxon-Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 291-92 (2005).  Judge Kravitz reasoned that he could not reach the merits of Byars' civil rights claims without "also sitting in review of the two underlying state-court judgments." *Rell*, slip op. at 4.  Judge Kravitz dismissed the case and ordered it closed. *Id.* at 5. In response, Byars sent the White House a letter about his experience before Judge Kravitz and in the state court system.  The Department of Justice replied to this letter, but did not address the merits of Byars' claims.

On January 5, 2011, Byars filed this action.  His claims against Governor Malloy are identical to his claims against Governor Rell, save for minor edits and a few omitted paragraphs.  He also argues that the federal government has violated his constitutional rights by acquiescing to the state court's unlawful actions; in the complaint's words, the federal government has "left intact the violations of Plaintiff's rights as applied by the State of Connecticut."  He names Governor Malloy and President Obama as the sole defendants.  He seeks only money damages.

### III.   Discussion

#### A. *Collateral Estoppel of Plaintiff's Claims Against the State*

The state of Connecticut argues that principles of collateral estoppel bar this court from reaching the merits of plaintiff's suit against Governor Malloy.  In August 2010, Judge Kravitz held that under *Rooker-Feldman* doctrine the Connecticut federal district court did not have the power to review  Byars' claims. *Rell*, slip op at 4.  The state asserts that Judge Kravitz' decision precludes this new lawsuit.

Collateral estoppel, or issue preclusion, prevents plaintiffs from bringing repeated lawsuits based on a legal issue previously tried and lost before another court. Under the doctrine, "an issue of law or fact actually litigated and decided by a court of competent jurisdiction in a prior action may not be relitigated in a subsequent suit." *United States. v. Alcan Aluminum Corp.*, 990 F.2d 711, 718 -19 (2d Cir. 1993). To rule otherwise would allow a losing party to present a new court with an "identical issue by merely 'switching adversaries.'" *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 329-30 (1979). Collateral estoppel "applies when: (1) the issues in both proceedings are identical, (2) the issue in the prior proceeding was actually litigated and actually decided, (3) there was a full and fair opportunity for litigation in the prior proceeding, and (4) the issues previously litigated were necessary to support a valid and final judgment on the merits." *Ali v. Mukasey*, 529 F.3d 478, 489 (2d Cir. 2008) (internal quotations marks omitted).

Because Byars' current lawsuit rests on a legal issue already resolved by another Connecticut district court, all four elements of the test for collateral estoppel are satisfied. First, the same legal issue presents itself in this new suit – Byars seeks review of final judgments of two Connecticut state courts, and I again have to decide whether *Rooker-Feldman* bars such review.[1] Second, the *Rooker-Feldman* issue was already litigated and decided before Judge Kravitz. On June 30, 2010, the court advised Byars that his action appeared to be barred under the doctrine, and invited Byars to revise his complaint to avoid dismissal. Byars submitted an amended complaint three weeks later. After careful review, Judge Kravitz concluded that Byars'

---

[1] On occasion, federal district courts review a state court's decision in a specific case. For example, in a habeas action, a federal district court can assess whether a criminal defendant's rights were violated during a state criminal proceeding. In the civil context, however, federal law channels all appeals of final state court judgments to the Supreme Court. See 28 U.S.C. § 1257. The Supreme Court has only noted one exception to this rule – where a plaintiff files a case in state and federal court at the same time, a state court judgment will not extinguish the pending federal suit just because the state court acted first. *See Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280, 291-92 (2005).

new complaint still called upon a federal district court to review and revise a state court's final judgment. Third, Byars had a full and fair opportunity to argue that *Rooker-Feldman* did not bar his complaint. He received notice of the potential problem and had a chance to submit a new set of papers that avoided the problem. Last, the *Rooker-Feldman* issue was central to a valid and final judgment in Byars' previous lawsuit. Because the doctrine barred the court from hearing Byars' claims, Judge Kravitz had no choice but to dismiss and close the case. *See also Shechet v. Abby Favali Corp.*, No. 05-5027, 2006 WL 1308656, at *2 (2d Cir. May 9, 2006) (noting that collateral estoppel applies to a prior dismissal based on lack of jurisdiction).

Thus, principles of collateral estoppel preclude this court from providing Byars with a new forum to relitigate old claims. The state's motion to dismiss Byars' suit against the Governor is therefore granted.

B. *The President's Immunity from Suits for Damages*

The United States government argues that this court has no power to hear a damages suit against the President. According to the government, Byars has only sued President Obama for actions the President took in his official capacity, and, since the doctrine of sovereign immunity bars such claims, this court must dismiss Byars' suit for lack of subject matter jurisdiction.

Under the doctrine of sovereign immunity, a citizen cannot sue the government or its employees for money damages, unless Congress passes a statute that waives the government's protection from suit. *FDIC v. Meyer*, 510 U.S. 471, 475 (1994). In *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971), the Supreme Court recognized an exception to this rule. When officers act in their personal rather than official capacities, they can be held liable for certain violations of constitutional rights. *Id.* Though *Bivens* allowed citizens to sue officers, it did not strip officers of all immunity from suit. An official can still raise an immunity defense as

a shield, and the scope of protection will depend on the official's role and the context of his actions. *Butz v. Economou*, 438 U.S. 478, 506-07 (1978) (holding that in a suit for damages officials are entitled to qualified immunity subject "to those exceptional situations where it is demonstrated that absolute immunity is essential"). In this case, the President can assert absolute immunity from *Bivens* actions for "acts within the 'outer perimeter' of his official responsibility." *Nixon v. Fitzgerald*, 457 U.S. 731, 756 (1982).

To the extent that Byars has sued President Obama in his official capacity, his suit must be dismissed for lack of subject matter jurisdiction. *See Up State Fed. Credit Union v. Walker*, 198 F.3d. 372, 274 (2d Cir. 1999) ("[A] waiver of sovereign immunity with respect to the claim asserted is a prerequisite to subject matter jurisdiction"). Byars' complaint speaks only of violations of his constitutional rights, and Congress has never waived the federal government's immunity for constitutional torts. *Meyer*, 510 U.S. at 477-78. Byars may have intended to sue federal officials under a private tort theory—he references the Department of Justice's negligent inaction, for example— and the Federal Torts Claims Act ("FTCA") has waived the federal government's immunity for some common law torts. But those claims would also be dismissed for lack of jurisdiction: Under 28 U.S.C. § 2675, a federal court only has jurisdiction over FTCA suits after a plaintiff has filed a complaint with an administrative agency and the agency has denied the claim. Byars has provided no proof that he filed such an administrative claim. Because sovereign immunity bars this court from hearing claims against President Obama in his official capacity, those claims must be dismissed.

As Byars' opposition brief makes clear, however, he intended to sue President Obama in his personal capacity, not his official capacity. *Plaintiff's Opposition to Motion to Dismiss* at 1 ("[T]he complaint against Barack Obama is in his individual capacity."). The federal

7

government does not address this argument; it moves only under Rule 12(b)(1) and states only that sovereign immunity deprives this court of jurisdiction over Byars' suit. As a practical matter, the government has identified a basis for dismissal. Under *Nixon*, the president enjoys absolute immunity from any damages suits based upon his decisions while in office. 457 U.S. at 756. Thus, no matter his legal theory, and no matter the facts he proves, Byars can never recover damages because the President chose not to reprimand Connecticut courts or Judge Kravitz. In a sense, then, immunity bars a federal district court from adjudicating Byars' claims.

As a technical matter, however, the federal government should have moved for dismissal under Rule 12(b)(6). Under *Bivens*, the Constitution pierces sovereign immunity and grants courts the power to hear a suit. Like section 1983 or the FTCA, the Constitution creates a cause of action that allows litigants to sue officers who otherwise could not be brought into court. *See Bivens*, 403 U.S. at 389 (holding that the Fourth Amendment gives rise to an implied cause of action for damages to redress officers' unconstitutional conduct). An officer can then raise an immunity defense that extinguishes a plaintiff's claim, but that defense does not serve as a jurisdictional bar at the outset of a lawsuit. *See* 16A Charles Alan Wright et al, Federal Practice and Procedure § 3573.3 (4th ed. 2008)(describing process for raising an immunity defense); *Mitchell v. Forsyth*, 470 U.S. 511, 525 (1985) (describing official immunity as "an entitlement not to stand trial" that should be resolved after a suit commences and before discovery begins); *Abrams v. Sprizzo*, 201 F. 3d 430 (2d Cir 1999) (dismissing case because absolute immunity was a dispositive defense). Thus, an absolute immunity defense does not deprive a court of subject matter jurisdiction and, since the defendant has not moved to dismiss the complaint because it rests on a faulty legal theory, this court is now in the position of having jurisdiction over an unchallenged but meritless claim.

In the Second Circuit, the district court has the authority to dismiss actions *sua sponte* in the rare case when it faces a truly frivolous suit. *Abrams*, 201 F.3d at 430 ("[T]he district court has inherent authority to dismiss frivolous actions"); *Leonhard v. U.S.*, 633 F. 2d 599, 609 n.11 (2d Cir. 1980) (noting that district court had the power to dismiss a complaint *sua sponte* for failure to state a claim). *See also Mallard v. United States District Court*, 490 U.S. 296, 307-08 (1989) (noting that even though a statute "authorize[s] courts to dismiss 'frivolous malicious' action,… there is little doubt [courts] have power to do so even in the absence of [a statute]"); *Baker v. Dir. U.S. Parole Comm'r.*, 916 F. 2d 725 (D.C. Cir. 1990) (holding *sua sponte* dismissal appropriate where "it is patently obvious that [plaintiff] could not prevail…"). Here, Byars can never win relief because the President is absolutely immune from Byars' damages suit.[2] If this case proceeded, the government would merely correct its error and file a successful motion to dismiss under Rule 12(b)(6). Rather than waste both litigants' time and resources, this court *sua sponte* dismisses Byars' claims against President Obama in his personal capacity for failure to state a claim upon which relief can be granted.[3]

IV.   Conclusion

For the forgoing reasons, both the state defendant and the federal defendants' motions to dismiss are granted. The federal defendant's motion to substitute a party is dismissed as moot. In

---

[2] By "frivolous", the court does not mean to suggest that Byars has not suffered harm, or that his constitutional claims should not be treated with care and respect. Rather, this court only uses "frivolous" as a term of art applicable in this case because it is legally impossible for Byars to obtain relief.

[3] The Second Circuit has held that a district court cannot dismiss a claim *sua sponte* unless a plaintiff has had notice of the court's intention and an opportunity to respond. *See Perez v. Ortiz*, 849 F.2d 793, 797-98 (2d Cir. 1988). These procedures ensure that a litigant can continue to fight his case by, for example, amending his complaint or clarifying his legal theory. In the vast majority of cases, notice and an opportunity to be heard are necessary to "secure a just determination." *Id.* at 797. Here, however, further hearings and filings are unnecessary because the plaintiff seeks a legal impossibility – money damages from the President for actions taken while in office. Further litigation would only prolong the inevitable and strain the resources of this court, the defendants, and, most important, the plaintiff. Thus, this case is the rare situation in which *sua sponte* dismissal without prior notice to the plaintiff is appropriate.

addition, the court *sua sponte* dismisses plaintiff's claims against the President in his personal capacity. It may be that Byars made an honest mistake when he had his complaint served on a FedEx employee at his local store, rather than on a corporate agent in Hartford. It may be that the marshal Byars hired should have alerted him to the proper method for serving papers on a corporation. It may even be that Byars' former employer discriminated against him. Unfortunately, this court has no power to hear his claims and provide a remedy for his injuries. The clerk shall enter judgment and close the file.

It is so ordered.

Dated at Bridgeport, Connecticut, this 29 day of September 2011.

/s/ Stefan R. Underhill
Stefan R. Underhill
United States District Judge